126   575<br>
180   306<br>
126      575<br>
32 SC ¹374

## O. B. KEITH ET AL. *v.* CITY OF PHILADELPHIA.

ERROR TO THE COURT OF COMMON PLEAS NO. 4 OF PHILA-
DELPHIA COUNTY.

Argued April 10, 1889—Decided May 27, 1889.
[To be reported.]

1. Whether or not the foot-front rule of assessment for the cost of paving and curbing a street, is legally applicable to an abutting property, within city limits, but claimed to be rural in character, depends upon the conditions existing at the time when the improvement is made, not at the time when the ordinance authorizing it is enacted.
2. Wherefore, on the trial of a scire facias to recover assessments for an

improvement made in 1878, the record of a judgment for the defendant in a like action by the same plaintiff, brought to recover assessments against a portion of the same property for an improvement made in 1874, wherein the same issue was raised, is inadmissible, either as evidence for the jury, or as a conclusive bar.

Before Paxson, C. J., Green, Clark, Williams and McCollum, JJ.

No. 234 January Term 1889, Sup. Ct.; court below, No. 364 March Term 1879, C. P. No. 4, M. L. D.

On March 11, 1884, a scire facias issued sur municipal claim for $391.84, for paving and curbing, against a lot of ground at the northeast corner of Indiana and C streets, filed May 15, 1879, wherein the city of Philadelphia, to use of Jacob M. Peters, was plaintiff, and Ormes B. Keith and others, heirs at law of Julia B. Keith, deceased, and B. W. Beesley, administrator of Julia B. Keith, were defendants. The defendants pleaded to the action, inter alia, " that the said plaintiff ought not to have or maintain the same, because they say the work for which the claim was filed was not authorized nor duly performed according to law, and this," etc.

At the trial on October 18, 1888, before Willson, J., it appeared that on May 18, 1872, a resolution of councils had been passed directing the Department of Highways to enter into a contract for the paving with rubble pavement of Indiana street, from Kensington avenue to Front street, the conditions of which contract should be, inter alia, that the contractor or contractors should collect the cost from the abutting property owners; that on February 26, 1873, in pursuance of said resolution, a contract was entered into with Jacob M. Peters, who covenanted that he would " execute and finish said paving in accordance with all ordinances and resolutions of said city relating to paving," etc., the city to pay for the work done under the contract, " in assessment bills, made out and signed by the proper officers, at the rate or sum of $1.50 for each and every square yard of said pavement laid in pursuance thereof," etc. The work for which the claim in this suit was filed was done in the year 1878.

The defendants set up the defence that at the time the claim was filed the said property was in a rural or suburban district,

and therefore not subject to the foot-front rule. To sustain this defence, they offered in evidence, inter alia, the record in the case of City of Philadelphia, to use of Jacob M. Peters, v. Julia B. Keith, et al., to No. 293 March Term 1875, from which record it appeared that the municipal claim sued upon in that case was for paving done upon the same street in front of premises constituting part of the same tract, known as the Dower Farm, the whole being owned by said Julia B. Keith; that the work therein had been done under the same resolution of councils, as well as under the same contract, as was the work done in this claim; that the same defence was then set up, and that a verdict and judgment had been rendered and had in favor of the defendants.

The offer was objected to by the plaintiff.

By the court: Objection sustained; exception.[1]

After evidence introduced upon the question of fact whether the property against which the claim was filed was rural or suburban property or not, the case closed on the testimony, when the jury, being instructed, returned a verdict for the plaintiff for $624. A rule for a new trial having been discharged, judgment was entered on the verdict, when the defendants took this writ, assigning as error the refusal of the defendants' offer of said record.[1]

*Mr. Robert J. Williams* and *Mr. George M. Dallas* (with them *Mr. G. L. Crawford*), for the plaintiffs in error:

1. The question, whether the property against which the claim was filed, was or was not rural, it is insisted must be referred to the time when the ordinance was passed: Trickett on Liens, 693, § 685. If at that time the city did not have the power to impose upon the property owners the charge which it purported to authorize the contractor to make against them, the ordinance was void. And whether the city had such power depends upon the answer to the question, whether the locus in quo was then rural. If it was rural, the power did not exist: Philadelphia v. Wetherill, 13 W. N. 10; Seely v. Pittsburgh, 82 Pa. 360; In re Washington Ave., 69 Pa. 352; Hammett v. Philadelphia, 65 Pa. 146; Craig v. Philadelphia, 89 Pa. 265.

2. The record offered was of a cause between the same parties, or their privies, upon a similar claim against the same

general tract, and showed a final judgment in favor of the defendants. It would have showed that precisely the same point as was made in the present case, had been conclusively determined against the present plaintiff. Upon well settled principles, the record would have constituted an absolute bar to recovery in this case: Wood v. Jackson, 8 Wend. 9 (22 Am. Dec. 603); Stevens v. Hughes, 31 Pa. 381; Hamner v. Griffith, 1 Gr. 193; Farrington v. Woodward, 82 Pa. 259; McGuinty v. Henrich, 5 Wend. 240; Aurora City v. West, 7 Wall. 82. Even if not conclusive, the former judgment was evidence for the jury: Kilheffer v. Herr, 17 S. & R. 319; Long v. Long, 5 W. 103; Smith v. Elliott, 9 Pa. 345; Cooper v. Derick, 22 Barb. 516.

*Mr. B. Woodward*, for the defendant in error:

1. The defendants in the first suit were Julia B. Keith and Jennie J. Bondinot, while in the present suit neither of these parties joined in the issue. Nor was there any competent evidence showing that either of the defendants in the present suit was privy in estate with either of the defendants in the first suit. In fact there was no competent evidence of any title to the property, now in question, in either of the defendants. And it is submitted that before they could be permitted to set up a record as an estoppel to defeat a suit in rem, it was incumbent on them to show their interest in the property by the production of their title papers.

2. Then, the causes of action in the two cases were not the same and had no connection with each other. In the first case the suit was for the recovery of an assessment bill given by the city to her employee, for work done in 1874, while the cause of action in the second case was another assessment bill given by the city to her employee for another job of work done at a widely different place, and some five years after the first. The fact that the two jobs were done under the same contract can make no difference, as there is no connection between the assessment bills and the contract, and the suits are not in any way based upon the contract.

3. What alone is decisive of the case is, that the issues in the two cases were widely and essentially different. The point submitted to the jury and decided in the first case was that

the locality of a lot of ground on the northwest corner of Leamy and Indiana streets was rural in 1874, in the sense that it was not then city and ripe for city treatment; while the issue in the second case was whether another locality, which was widely and essentially different from the first, was some five years after the date of inquiry in the first case, rural, in the sense that it was not ripe for city treatment. The issue arising in the second case could not by any possibility have been decided in the first case, and, therefore was not res judicata, even if the parties had been the same.

4. The resolution of May 18, 1872, is silent as to the mode of assessment. It specified no time when the work should be done or the assessment made. It simply gave authority to do the work. The manner of doing it and the mode of assessment were provided for by general ordinances. It therefore follows that until an assessment is made no injury can be done the property owner. And if at that time, which is the proper time of inquiry: Philadelphia v. Rule, 93 Pa. 15, the property has ceased to be rural, the property owners cannot complain, if, in making the assessment the foot-front rule is applied; and if, as in this case, they have received a special and peculiar benefit in the enhancement of the value of their property, honesty and good conscience demand that they should pay for it. Furthermore, as the property owners in this case were instrumental in bringing about the improvement in question, they are not only morally, but legally estopped from contesting the legality of the assessment: Bidwell v. Pittsburgh, 85 Pa. 412; McKnight v. Pittsburgh, 91 Pa. 273; Germania Saving Bank's App., 95 Pa. 329.

OPINION, MR. JUSTICE CLARK:

In applying the rule of res adjudicata in this case, the question is mainly as to the identity of the matter *now* in issue, with what *was* in issue at the trial of the former scire facias, the record of which was offered and refused. This municipal claim having been filed, and the scire facias issued against certain parties as the administrator and heirs-at-law of Julia B. Keith, deceased, it would not be required of the defendants to show that they were the administrator and heirs, for that was part of the plaintiff's case. The defendants could certainly not be

called upon to prove what the plaintiff himself has spread upon the record as the basis of his recovery. As the jurisdiction of the court, in which the matter now at issue is alleged to have been adjudicated, is conceded, and the identity of the parties, by privity of estate, is established, the question, upon which the whole case turns, is the identity of the matter in dispute.

It is undoubtedly true that the record which was offered would show that certain property, adjacent to the property in question, both together constituting a larger lot known as the Dower Farm and belonging to the same owner, was adjudged by a court of competent jurisdiction to be rural property and therefore not liable to a lien for paving done in 1874, according to the foot-front rule of assessment. But the paving in that case was done in 1874, whilst in this case it was done in 1878, and it is contended on the part of the plaintiffs that the record of the defendants' recovery on a claim for paving in 1874, can have no conclusive effect on the trial of a scire facias for paving done four years later. On the part of the defendants, however, it is argued, that in such a case as this, the character and condition of the property is to be inquired of as of the date of the ordinance authorizing the improvement, and not of the date when the improvement was made; and, that as the paving of 1874 and that of 1878 was done under the same ordinance, in front of different portions of the same property, the question now at issue is necessarily the same which was passed upon in the trial of the former action, and that the matter in issue has therefore passed in rem adjudicatam.

We cannot accept this view of the case. The ordinance of 1872 laid down no rule for the assessment of the benefits resulting to the abutting property; it simply authorized and directed the Department of Highways " to enter into a contract with a competent paver or pavers, who shall be selected by a majority of the owners of property fronting on Indiana street, from Kensington avenue to Front street, for the paving thereof with rubble pavement," with conditions, etc., " that the contractor or contractors shall collect the cost of said paving from the property owners " fronting thereon, respectively. The assessments according to the foot-front rule were not made under this ordinance, but would seem to have been authorized by the general ordinances of the city, enacted May 3, 1855, and

June 12, 1868. But these general ordinances, providing for the assessment of benefits according to the foot-front rule, cannot have any application to farm lands or rural property, although the same be situated within the city limits: Washington Ave., 69 Pa. 353; Seely v. Pittsburgh, 82 Pa. 360; Craig v. Philadelphia, 89 Pa. 265. Whilst perhaps all property within the limits of a borough or city may be assessed, according to some reasonable rule, for special and peculiar benefits conferred by local improvements, it is now well settled that the foot-front rule can only be applied to the built-up portions of the city, or to property ripe for city treatment. Sewerage, sidewalks, paved and lighted streets, fire protection and other city improvements, are not essential to the ordinary enjoyments of farm lands, and to impose the expense thereof on a large frontage of such property would amount in many cases to confiscation.

The streets and avenues, however, must conform to the extent of the city: as the city's population increases and the demand for homes is developed, they will of necessity be extended accordingly. But it is only when, from the built-up condition of the immediate neighborhood, the public health and the common convenience and necessity demands these improvements, that they may be made, and the expense thereof apportioned according to the foot-front rule. It is the common benefit received or about to be received which justifies an apportionment of the expense, and the built-up or improved condition and small size of city lots, which renders this rule of assessment a reasonable one.

It is in the application of the rule its legality in each case is to be determined. This provision of the general ordinances of 1855 and 1868 is a valid and proper one, but, as we have said, it must be applied only to city property. The ordinance of 1872 does not apply this or any other rule to the amount of benefits arising from the paving of Indiana street; it simply directs the work to be done.

The provisions of the general ordinances were applied to the property when the assessments were made in pursuance thereof, and it is therefore the condition of the property when the tax is assessed which, in cases of this kind, must control. It follows that the judgment on the former scire facias can have no conclusive effect in this case.

The record was inadmissible for any purpose. Assuming that the defendants' property was of a rural character in 1874, and the record, if received, could establish no more, it does not follow that this was its condition in 1878. Indeed, it is alleged, and it would appear to have been proved that in 1878 very valuable improvements had been made in this vicinity; that a large number of dwelling-houses had recently been erected and were occupied, and that places of business, manufacturing establishments, etc., had been located in the immediate vicinity and were in operation; in short, that the bounds of the built-up city then embraced this property.

The court was right in refusing this record, and as there is no other error assigned,

The judgment is affirmed.