## The City of Philadelphia to the use of John M. Mack *v.* Julia Gorgas, owner and registered owner, Appellant.

[Marked to be reported.]

*Road law—Assessments for paving—Condition of property.*

The question of the liability of property for assessments for paving depends upon the condition existing at the time the paving is done, and not at the time the ordinance authorizing it is enacted.

*Road law—Paving assessments—Farm land—Question for jury.*

On the trial of a scire facias sur municipal lien for paving, it appeared that the property assessed was a lot two hundred and forty feet square, on which was erected a building in which the defendant kept a store; there was also a stable used in connection with the store business. Some corn, potatoes and other vegetables were raised upon the lot for family use, and some beans which were sold. In this connection some plowing and harrowing were done. The street on which the property was situated had all the city improvements except a sewer. It had water pipe, gas lamps and police, and it was sufficiently built up to be considered urban instead of rural. *Held*, (1) that the question whether the property was farm land was for the jury; (2) that a verdict for plaintiff should be sustained.

*Municipalities—Municipal contract—Irregularities in.*

Where defects in municipal contracts are irregularities only, third parties are not permitted to raise questions between the municipality and its contractors.

It is not competent for a defendant in a municipal lien to raise questions

relating to the formal details of agreements between the city and its con-
tractors, or to their execution and performance, where the acts of the
municipal officers have been ratified, and the work done by the contractors
has been accepted.

*Municipalities—Municipal contracts—Act of June 1, 1885—City ordinance—Paving.*

The Act of June 1, 1885, article 14, P. L. 37, directs that "all contracts
relating to city affairs shall be in writing, signed and executed in the
name of the city by the officer authorized to make the same, after due
notice, and in cases not otherwise directed by law or ordinance such con-
tracts shall be made and entered into by the mayor." A municipal ordi-
nance for paving provided "that the director of the department of public
works be and he is hereby authorized and directed to enter into a contract
with a competent paver," etc. There was no provision in the ordinance
avoiding a contract which was not signed by the officer authorized to
make it. A contract for paving was signed by the mayor. The work
was done under the contract, and was accepted by the city. *Held*, that a
property owner could not call in question the validity of the contract
because it was signed by the mayor, and not by the director of the depart-
ment of public works.

Argued Jan. 7, 1897. Appeal, No. 356, Jan. T., 1896, by
defendant, from judgment of C. P. No. 3, Phila. Co., Sept. T.,
1890, No. 881, for plaintiff, on municipal lien. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL,
DEAN and FELL, JJ. Affirmed.

Scire facias sur municipal lien. Before FINLETTER, J.

At the trial the plaintiff offered in evidence ordinance of
councils of Philadelphia, approved July 3, 1889, and called
Isaac R. Martindale as a witness, who being affirmed said that
he held the position of bill clerk in the bureau of highways;
that he had in his possession a contract between the city of
Philadelphia and Mr. Mack for paving Allen's lane, and pro-
duced the same. The said paper contract was offered in evi-
dence.

Objected to, evidence admitted, exception and bill sealed for
the defendant. [1]

The material provisions of the ordinance of July 3, 1889, is
stated in the opinion of the Supreme Court.

Plaintiff offered in evidence the bill made out to Julia Gor-
gas for the paving for 375.44 square yards, $755.28, dated
August 26, 1890, certified by the assistant commissioner of

highways of that district and by the chief of the bureau of highways as being correct.

Objected to, evidence admitted, exception and bill sealed for the defendant. [2]

Plaintiff offered in evidence lien filed in the case.

Objected to, evidence admitted, exception and bill sealed for defendant. [3]

Defendant called Josephus Yeakle who said he was one of the assessors of the twenty-second ward during 1889, and was such until three years ago; that he had been assessor about twelve years, down to 1892. He knew the property of the defendant at Germantown road and Allen's lane, as a store at the corner, fronting on Germantown road. He was then asked: " Q. At how much was it assessed in 1889, if you know? "

Objected to.

The Court: You may show the condition or character at the time the contract was made, and from that on until the work was done.

Mr. Hopple, of counsel for defendant: You sustain the objection to the offer to show what it was at the time the ordinance was passed?

The Court: Yes, sir.

Mr. Hopple: I will ask the witness at what it was assessed in 1889.

The Court: That would make no difference. You must confine your offer to the time when the contract was made.

Exception, and bill sealed for the defendant. [4]

The same witness was asked, " Was there any change in the appearance of that property, and the locality or the condition of things between 1889 and 1892? "

Objected to, objection sustained and bill sealed for the defendant. [5]

Mr. Hopple: I propose to ask this witness if he knows why the assessment was changed from what it was in 1889, to what it was in 1890.

Objected to, objection sustained, exception and bill sealed for the defendant. [6]

The defendant was sworn as a witness, and testified about her own and other property on Germantown avenue and along Allen's lane, and that she farmed it—kept it for farming purposes

—and that the adjoining and adjacent properties were used for trucking and farming purposes; and after being asked, but not permitted by the court to answer, what her property was assessed at in 1889, whether less than full city rates, proceeded thus: " Q. Had you a photograph made of the property at the time of the paving?   A. Yes, sir; I had.   Q. You never signed a petition for the opening of a street?   A. No, sir.   Q. Or any agreement to pay for it?   A. No, sir.   Q. Were you ever asked to do so?   A. No, sir.   Q. Is this property city property?" (Objected to; objection sustained.)   " Q. Do you have city water in your house?   A. No, sir.   Q. What do you use? A. Pump water.   Q. What do the rest of the houses along Allen's lane use?   A. They all use pump water.   Q. There is no city water used?   A. No, sir.   Q. Are there any other houses along there which use city water?   A. I do not know. Q. Do the houses there have gas in them?   A. No, sir. Q. Would you call that land city property, or not?"   (Objected to; objection sustained.)   " Q. State the character of the land in general terms."

Objected to, objection sustained, exception and bill sealed for defendant. [7]

Josephus Yeakle was recalled by the plaintiff, and testified on examination in chief as follows: " Q. At the time the change in the assessment was made, and these properties assessed at full city rates, how far did the change extend?"   (Objected to; testimony admitted; exception for defendant).   "A. It reached the territory on Germantown avenue, about one mile, and from Germantown avenue back to Allen's lane and the railroad, and about a mile and a half south."   After stating that the change in the assessment was all made at one time, and that he was familiar with the properties in the neighborhood in 1890, but that he could not say that he knew of property on Allen's lane, or near it, being offered for sale, or the prices paid for any, and that he was the assessor of that district at that time (1890), and that in his opinion the property in this locality was best adapted in 1890 for residences, and not for farming purposes, and that he did not remember what the property along Allen's lane was worth, in 1890, per foot front, the cross-examination of witness was as follows:

By Mr. Hopple: " Q. You said a change took place, what

territory did it cover?   A. A change from suburban rates.
Q. That was in 1890?   A. Yes, sir.   Q. Previous to that it
had been assessed at less than full city rates?   A. Yes, sir.
Q. You simply raised the assessment on the main street,—How
was Levering avenue; that was kept as rural?   A. I cannot
remember that now.   Q. Can you tell by your books?  A. 1889
is here, but 1890 is not. Q. You changed the assessment, and
confined yourself to the property lying along the main street?
A. Yes, sir; and Allen's lane.   Q. What is your recollection
as to Levering avenue, right below there?   A. I cannot remem-
ber it.  Q. Did you take both sides of the Main street?  A. Yes,
sir.   Q. What was the object of that—to get around the ordi-
nance of councils?"

Objected to; objection sustained; exception and bill sealed
for defendant. [8]

Dr. Charles S. Turnbull was called as a witness for the plain-
tiff and testified that he lived on Allen's lane in this strip which
was paved by the city; had lived there nine years, owned the
property, knew of purchases and sales or the asking prices of the
property in that neighborhood.   He was then asked : " Con-
fining your answers to 1890, state what, in your opinion, the
property was best adapted to?"

Objected to, testimony admitted, exception for defendant.
" A. Resident neighborhood."

The witness was then asked: " Q. What was property worth
on Allen's lane at that time?"

Objected to, testimony admitted, exception for defendant.

" A. Anywhere from $5,000 an acre up, according to the im-
provement." [9]

Peter B. Hinkle was called as a witness for the plaintiff, and
testified that he knew the locality in question, could not say
that he knew the value of property in that locality because not
much had been sold, did not know the price for any sold in that
particular locality, knew of the sale to the deaf and dumb asylum,
sixty-four acres, thinks Mr. Houston paid $90,000, sold it for
$120,000, about $2,000 an acre.   Witness's business had been
agent for H. H. Houston estate, and in addition to that he had
some knowledge of real estate, both farm and other land.   After
which the witness was asked: " Could anyone afford to pay
$2,000 an acre for farm land?"

Objected to, testimony admitted, exception for defendant.

"A. No, sir, I do not think any man could afford to do that."
[10]

He further testified: "Q. Do you know the price asked along that street?"

Objected to, testimony admitted, exception for defendant.

"A. No, sir, I do not know of any one who wants to sell at present. Q. State what, in your opinion, the property along Allen's lane was best adapted for in 1890?"

Objected to, testimony admitted, exception and bill sealed for defendant.

"A. For nothing else than building lots if it was sold off, but none has been sold. McGowans have theirs up for sale but they cannot sell it." [11]

Hugh McLean, a witness for plaintiff, testified as follows: "Q. Where do you live? A. At the corner of Carpenter and Crease streets, Germantown. Q. How near the locality in question? A. About one mile. Q. Are you familiar with this locality? A. Yes, sir. Q. And were you in 1890? A. Yes, sir, with a portion of it. Q. Have you kept yourself posted as to the sales, and have you asked the price of land in the neighborhood? A. Yes, sir. Q. In your opinion what was the property in Allen's lane best adapted for in the year 1890?"

Objected to, testimony admitted, exception and bill sealed for defendant.

"A. For building purposes. Q. Was it adapted for farming purposes? A. Some portions of Allen's lane could be farmed, but it would not pay to do it." [12]

The court charged in part as follows:

[In this case we have a farm of about one acre, on which the lady has a store, and does business, in addition to the farm, as a storekeeper; the store is on this very land, and her stable, which seems to be necessary to her store, is also on the land. In addition to that, although she claims this to be a farm, we have no evidence that she uses it as farmers use their land. There is no evidence of her plowing it, or harrowing, or sowing it with wheat or grain, and the truth of the matter simply is that the vacant land which is not occupied by her business she uses as a little garden, and raises potatoes, corn and things of

that kind.   It is a garden and not a farm, and even if she went through the formality of using a plow and harrow, that would not make it a farm.] [13]

[The question for the jury to determine in this case is this : Is this property as it is now, ripe for city improvements ; that is, is it ready to be used and occupied for the purpose of city homes or city places of business ?   If it is so ripe, and ready for all those purposes, then the plaintiff ought to recover.   If it is not in that condition, ready to be used for the purposes of city homes and business places, the verdict should be for the defendant.] [14]

[What would this property sell for?   It fronts on one of our most public thoroughfares, built up, I presume, all the way up to Chestnut Hill.] [15]

[Is this a city lot or is it a farm?   You must settle the question as to whether the lot owned by this lady is a farm, or whether it should be classed as city property.   If you regard it as farm land, your verdict should be for the defendant; if you regard it as a city lot, your verdict should be for the plaintiff.] [16]

Defendant's points and answers thereto among others were as follows :

1. To entitle the plaintiff to recover the expense of the paving in this case, it must have complied with all the conditions precedent, whether prescribed by the act of assembly or ordinance. *Answer :* Refused. [19]

2. The ordinance of July 3, 1889, authorizing and directing the paving of Allen's lane in front of the defendant's property, expressly stated : " Provided that the owners of any property on the line of said Allen's lane, which may be assessed at less than full city rates, shall first enter into an agreement to pay for the paving in front of their respective properties."   The proviso or provision was a limitation of authority upon the director of the department of public works, amounting to a negation of all authority beyond its prescribed and clearly-defined limits, and there was no authority to do the work in question until the owners of the property on the line of Allen's lane, which were assessed at time of the passage of the ordinance at less than full city rates, should first enter into an agreement to pay for the paving in front of their respective properties, and

as the property of the defendant was at that time, and for that year, assessed at less than full city rates, and as the defendant never entered into an agreement to pay for the paving, your verdict should be for the defendant. *Answer :* Refused. [20]

3. Under the pleadings in this case it is the duty of the plaintiff to show affirmatively that the paving was done pursuant to and under the authority of the ordinance of councils of July 3, 1889, and to do that it must show that the provision, as to an agreement to pay on the part of the owners of property assessed at less than full city rates at the time of the approval of the ordinance, was fully complied with, and the failure of the plaintiff to show such fact prevents a recovery by it, and the verdict should be for the defendant. *Answer :* Refused. [21]

4. If the jury believe that the property of the defendant was assessed at less than full city rates at the time of the passage and approval of the ordinance of July 3, 1889, and that she never entered into an agreement to pay for the paving, authorized by said ordinance, then there can be no recovery against her or her property, and the verdict should be for the defendant. *Answer :* Refused. [22]

5. If the jury believe the property of the defendant, for the year 1889, was assessed at less than full city rates, then the city of Philadelphia, by its ordinance of July 3, 1889, declared that the property in question should not be subject to the tax sought to be imposed upon it by the lien, in this case, unless the defendant should first enter into an agreement to pay for said paving, and if she did not enter into such an agreement and, at the time the work was done in the year 1890, there had been no change in the character of the land or the locality in which it was situated, requiring or justifying the assessment to be changed to full city rates, and the property in 1890, when the work was done, was the same as in 1889, when the ordinance was approved of, then they should find that the property was rural when the work was done, and the verdict should be for the defendant. *Answer :* Refused. [23]

6. If the jury believe that the property in this case was assessed at less than full city rates on July 3, 1889, and the assessment was increased for the year 1890, so that the proviso of the ordinance of July 3, 1889, relating to an agreement being first entered into by the property owners for paying for such paving,

could not apply to the property in 1890; and that such increase or change was made by the board of revision of taxes, or taxing officers, for the purpose of contravening said ordinance of July 3, 1889, or rendering it inapplicable to the property in the year 1890, when said work was to be done and was done, then such purpose and action were illegal and such efforts should fail, and the verdict should be for the defendant. *Answer:* Refused. [24]

8. If the jury believe that Allen's lane was not ripe for city improvements at the time said work was done, the verdict should be for the defendant. *Answer:* Refused. [25]

9. The alleged contract between the city and the claimant, not having been entered into, that is signed and executed in the name of the city, by the department of public works as required by the ordinance of July 3, 1889, there was no authority for the claim and to do said work under said ordinance, and the verdict should be for the defendant. *Answer:* Refused. [26]

10. The ordinance of May 3, 1855, set forth in the pleadings in this case, has not been repealed by the ordinance of December 30, 1886, and unless the jury believe that the requirements of the ordinance of May 3, 1855, have been complied with, the plaintiff cannot recover, and the verdict should be for the defendant. *Answer:* Refused. [27]

11. Under all the evidence in this case the verdict should be for the defendant. *Answer:* Refused. [28]

Verdict and judgment for plaintiff for $1,036.91. Defendant appealed.

*Errors assigned* were (1–12) rulings on evidence, quoting the bills of exceptions; (13–16, 19–28) above instructions, quoting them; (17) the charge was insufficient; (18) the charge was misleading, unfair and unjust.

*Wm. Hopple, Jr.,* for appellant. — The defendant "can be made subject to a legal obligation only where the power conferred on the municipal authorities has been legally exercised," and "jurisdiction over the defendant and her property could be obtained only by pursuing rules prescribed by law:" Fell v. Phila., 81 Pa. 58.

The contract in this case was not a lawful contract for the paving in question, and there can be no recovery by the plain-

tiff.  That case is governed by the following cases: Stetson v. Croskey, 52 Pa. 230; Young v. Edwards, 72 Pa. 257; Reilly v. Phila., 60 Pa. 467; Pittsburg v. Walter, 69 Pa. 365; Olds v. Erie City, 79 Pa. 380; City v. Lea, 5 Phila. R. 77; City v. Stewart, 1 W. N. C. 242; Erie City v. Brady, 127 Pa. 169; Erie City v. Moody, 176 Pa. 478.

The assessment of the property in the year 1889, was the material and important subject for inquiry in the case, and not what might have been the assessment in the year 1890, or any other year subsequent to 1889.

The property in question was farm land: Seely v. Pittsburg, 82 Pa. 360; Phila. v. Sheridan, 148 Pa. 532; Washington Ave., 69 Pa. 352.

*E. O. Michener,* for appellee.—The offer to prove how the property was assessed in 1889, was not relevant.  The entire question is restricted to the time when the work was done: Keith v. Phila., 126 Pa. 575.

OPINION BY MR. JUSTICE GREEN, March 15, 1897:

The seventh point submitted by defendant was in the following words: " If the jury believe that the land on Allen's lane was not, at the time the paving was done, cut up into compact city lots, nor built upon as city lots, then the defendant's lot is not liable to be charged by the foot front rule of assessment and the plaintiff cannot recover, the verdict should be for the defendant."  The learned court below affirmed this point thus directing the jury to find a verdict in favor of the defendant, if, at the time the paving was done, the land on Allen's lane was not cut up into compact city lots, nor built upon as city lots.  The time was fixed as the time when the paving was done, and the character of the improvements was designated as cutting into compact city lots or being built upon as city lots.  These considerations constituted the test, as fixed by the defendant herself, of liability to assessment for street paving.  The same test, so far as the time was concerned, was also emphatically stated in the ruling of the court upon a question of the admissibility of certain testimony offered.  When the witness Josephus Yeakle was on the stand he was asked, " Q. At how much was it (the lot in question) assessed in 1889, if you know?

Objected to.   The court: You may show the condition or char-
acter at the time the contract was made, and from that time on
until the work was done.   Mr. Hopple: You sustain the objec-
tion to offer to show what it was at the time the ordinance was
passed.   The court: Yes, sir.   Mr. Hopple: I propose to show
that the contract was made in 1890, and the work was done in
1890.   I will ask the witness at what it was assessed in 1889.
The court: That would make no difference; you must confine
your offer to the time when the contract was made."

Other questions were asked, and other attempts were made,
to prove the assessment made in 1889, but all were rejected on
the same ground, to wit, that the time at which the character
of the property was to be considered as to liability to assess-
ment for the paving, was the time when the contract was made
and the work done, and not the time when the ordinance was
passed.   These rulings constitute the basis of many assign-
ments of error, but as they were made in precise accordance
with the decision of this court in the case of Keith v. City, 126
Pa. 575, those assignments cannot be sustained.   A careful
examination of the opinion delivered by Mr. Justice CLARK in
that case convinces us that it sustains the syllabus in which it
is distinctly stated that the question of liability of the property
in question depends upon the conditions existing at the time
when the improvement is made, and not at the time when the
ordinance authorizing it is enacted.   This disposes of the fourth,
fifth, sixth, eighth, ninth, eleventh, twelfth, nineteenth, twen-
tieth, twenty-first, twenty-second, twenty-third and twenty-fourth
specifications of error, all of which are dismissed.

The property of the plaintiff which was charged with the
assessment for paving was a lot two hundred and forty feet
square containing a little more than one acre.   There was
erected on it a building in which the defendant kept a store,
and also a stable used in connection with the store business.
Some corn, potatoes and other vegetables were raised upon it
for family use, and some beans were sold.   In this connection
some plowing and harrowing were done.   Whether this consti-
tuted it a farm property, or whether it was to be regarded as
city property, was the principal question in the case, and it was
left to the jury to decide.   The learned judge charged the jury
as follows on this subject: "And as counsel suggested to you,

you must settle the question as to whether the lot owned by this lady is a farm, or whether it should be classed as city property. If you regard it as farm land the verdict should be for the defendant. If you regard it as a city lot your verdict should be for the plaintiff." This was a fair submission of the fundamental question of the case, and the jury very properly, as we think, found that it was not farm land but was a city lot. We do not think the remarks of the court on that subject, in the charge, are fairly subject to criticism. He called the jury's attention to the leading characteristics which distinguish farm land from city lots, and it was entirely proper that this should be done. This small lot certainly was not a farm in any proper sense of that term. The street on which the property was situated had all the city improvements except a sewer. It had water-pipes and gas lamps and police, and it was sufficiently built up to be considered urban instead of rural. The jury has so found and it was their particular duty to determine this question. These considerations cover the seventh, tenth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, eighteenth and twenty-fifth specifications of error. When the court below said in the charge to the jury, " Is this property as it is now ripe for city improvements," the judge certainly did not mean to designate the day of the trial, as the time at which the question was to be considered, because he had particularly decided that the time was when the contract was made and from that time until the work was done. He was speaking in the present tense, though as to a time which was past, and was not speaking technically as to the exact time when the character of the property was to be determined. A reading of the context clearly shows this.

The first, second, third and twenty-sixth specifications of error are without merit. They call in question the validity of the contract for the paving work in question because it was signed on behalf of the city by the mayor and not by the department of public works. If the matter of signature were a jurisdictional fact, so that the contract would be void if not signed by a particularly designated officer, there would be controlling force in the objection : Erie City v. Moody, 176 Pa. 478. But there is no such provision in the legislation or in the ordinance which authorized this work to be done. The Act of 1885, article 14, P. L. 37, does direct that " All contracts relating to city affairs shall be in writing signed and executed in the name of

the city by the officer authorized to make the same after due notice, and in cases not otherwise directed by law or ordinance such contracts shall be made and entered into by the mayor." The ordinance of 1889, under which the work in question was done, ordained " That the director of the department of public works be and he is hereby authorized and directed to enter into a contract with a competent paver," etc. There is no provision avoiding the contract unless it is signed by the officer authorized to make the same, and hence the case falls within the line of decisions where the defects in the contracts are irregularities only, and as to these the rule is perfectly well established that third parties are not permitted to raise questions between the city and its contractors. The case of Fell v. Philadelphia, 81 Pa. 58, is a leading illustration of this distinction. Numerous objections were there made to the validity of the contract because certain regulations had not been complied with. They were all disallowed but one, as to which the ordinance provided that two weeks notice at least should be given in two daily papers of the application of persons applying for contracts, before any such contract should be made. As this was a jurisdictional requirement and the contract could not exist without it, the contract was held invalid in that case. WOODWARD, J., delivering the opinion, said as to the other objections, " It has been uniformly held that it is not competent for a defendant to raise questions relating to the formal details of agreements between the city and its contractors, and to their execution and performance, where the acts of municipal officers have been ratified and the work done by the contractors has been accepted," citing a number of cases. This distinction was also noted in the case of Erie City v. Moody, supra. It is not necessary to pursue the subject further. The contract in this case was regularly signed by the mayor, who is the proper officer to sign all contracts unless some other officer is specially designated. It was no concern of the defendant in this case, whether this contract was signed by the mayor or director of public works, and as the contract was ratified and the work was accepted by the city, this defendant could not be heard to impeach it, for an irregularity which is not jurisdictional. We do not consider that any of the assignments of error are sustained, and they are therefore all dismissed.

Judgment affirmed.