## Jefferson County *versus* Slagle *et al.*

1. A contract made by county commissioners within the scope of their authority is binding on the county, although not made at their office.

2. Two commissioners have power to make a contract if made in their capacity as commissioners.

3. County commissioners contracted with Dickey to build a court-house, he contracted with Slagle for bricks and neglecting to pay, Slagle refused to deliver them. Two of the commissioners told Slagle if he would deliver the bricks they would pay him. The jury found that they made the promise officially. *Held*, that the promise was not within the Statute of Frauds and that the county was bound.

October 20th 1870.   Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of. Common Pleas of *Jefferson county :* Of October and November Term 1870, No. 94.

On the 25th of November 1868, William and Daniel Slagle brought an action of assumpsit against the county of Jefferson, for a quantity. of bricks furnished by them for the erection of the court-house.

On the 20th of July 1866, James T. Dickey contracted with the county commissioners to erect a court-house to be finished on or before the 1st of December 1868, for which he was to be paid $57,600, of which $5000 were to be paid in hand, $10,000 on the 1st of January 1867, "and the balance to be paid as the work progresses less 20 per cent. of the amount of work and material furnished at the time the payments are made;" the 20 per cent. to be paid when the work should be completed.

On the 11th of February 1868, the plaintiffs contracted with Dickey to manufacture 300,000 bricks for him, one-half to be ready on the 1st of June, and the remainder on the 1st of December in the same year, Dickey to furnish all the material and pay the plaintiffs $7 per thousand for making them ; the plaintiffs " to receive one-half the pay in money, or such merchandise as is needed as the work progresses, and the balance after the contract is finished."

On the trial, December 22d 1869, before Campbell, P. J., W. Slagle, plaintiff, testified that in July after Dickey had received 25,000 or 30,000 bricks, he told the commissioners that he could not let Dickey have any more bricks without money, he stopped Dickey from getting bricks, $200 were paid him afterwards. August 17th, " I called on the commissioners before bringing this suit; I think in November 1868.   I presented them the amount of our claim for the bricks, and they would not do anything ; they wanted us to wait and not do anything; I called on them at their office."

J. Buffington testified that about July 20th, Lucas and Monks, two of the commissioners, came to Slagle and wanted bricks; Slagle said he would furnish no more bricks to Dickey.   " Lucas told him to go on and make them as fast as he could and he would stand good for the pay.   He told it again in presence of Monks ; said they had about $19,000 back on the contract between Dickey and county, and they said they would pay Slagle out of that money."   The bricks were furnished to the court-house after this arrangement.

A. McLain who superintended the building for Dickey testified that they were out of bricks and spoke to the commissioners about it ; one of them said, " it was all fixed, the county would pay the Slagles."

Dickey testified that the commissioners told him that they had told the plaintiffs to go on and make the bricks, and they, the commissioners, would see them paid. " It was the understanding with me that the commissioners were to pay Mr. Slagle for the bricks, and keep it out of my contract."

D. Slagle, plaintiff, testified : " The commissioners came down (to the brick-yard), and asked about these bricks, and we told them that we had refused to give him any more bricks because he did not come up to his contract ; they told me if there could be no other way, they must have the bricks of course. I told them it did not make any difference to me whether they took the bricks or not, for we could sell them for more than the contract-money. They said they were bound to have the bricks, because it would not pay to have the hands lying here idle ; they said they would pay for the bricks ; that they were back on Dickey $19,000. I told them that if they would stand good for the pay, of course they could have the bricks. They said they would hold back out of Dickey's contract to make themselves safe."

The defendant offered " to prove that the arrangement at the brick-yard was only a conditional assumption, and that they informed Slagles that Dickey had money enough coming from the county, and it would be all right ; that in November or December following the commissioners had paid out all the money and more than was due him by the commissioners ; that he refused to go on with the contract, and the work ceased. In consequence of that the commissioners proceeded to relet the contract for finishing the house ; that they did relet it to Nicholson & English for $21,742." The offer was objected to, rejected, and a bill of exceptions sealed.

For the defendant, Monks one of the commissioners testified that about July 1st he and Lucas were returning from looking at a bridge at Troy, and stopped at the brick-yard ; that plaintiffs said to them they had heard that Dickey was about failing ; Lucas told them to hurry and get the bricks made ; that Dickey was drawing money every day, and if they had their bricks ready he thought there would be no trouble about the pay ; there was no agreement by the commissioners to pay the debt. There was no official act of the commissioners making a contract with the commissioners.

The defendant proposed to prove that the commissioners paid Dickey, on his contract, after this alleged arrangement, $5900. This was objected to, rejected, and a bill of exceptions sealed.

Lucas testified substantially as Monks had done, and also that they had gone as commissioners to see the bridge and charged the county for one day.

Another commissioner testified that whenever the interests of the county required it, they attended to business out of the office.

[Jefferson County v. Slagle.]

The following were the plaintiffs' 2d point and the answer:—

"2. If two of the commissioners, in order to obtain the brick to finish the court-house, went to the yard and promised the plaintiffs, that if the bricks were delivered at the court-house, they would pay for them, and the bricks were delivered on the strength of this promise, the county would be bound by their agreement for the amount of bricks delivered after and in pursuance of that promise."

Answer: "We answer the plaintiffs' 2d point in the affirmative, if Lucas and Monks went to the brick-yard and made the contract, or assumed the payment of the bricks as commissioners, and not as individuals. It is first for you to determine whether there was any assumption at all by Lucas and Monks as commissioners; or did they merely say, that if they would hurry up the bricks— that they were paying Dickey money as fast as he did the work, and that they would get their money out of payments made to him. They may have said they had no doubt but plaintiffs would get their money from Dickey, out of money to be paid to him. It would avail nothing. They may even have asserted, that we will see that they are paid, because there was still $19,000,— still coming to Dickey on contract, and if the bricks were furnished, they would see that Dickey paid them. It would avail nothing. They must have made the assumption as commissioners. If they did, and plaintiffs relying on such assumption by them as such, delivered the bricks, the plaintiffs may recover. How are the facts? They are for you."

The defendant's points and answers were:—

"1. There is no such action shown by the board of commissioners as would bind the county. That admitting there was an assumption by Monks and Lucas at the brick-kiln, it would avail the plaintiffs nothing, as they were not acting as a board of commissioners, and could not bind the county."

"We decline to answer defendant's 1st point as requested. Lucas and Monks may have been acting for the county in visiting the brick-yard as much and in the same way they were while looking after the county bridge at Troy. If the assumption was made by the county, and the bricks were delivered on the faith and credit of the county, and the commissioners there on the ground pledged the county for the payment of the bricks, the plaintiffs may recover. This substantially answers this point in the negative. If Lucas and Monks pledged themselves, and not the county, in payment, we answer this point in the affirmative."

"2. The Statute of Frauds bars the plaintiffs' claim; the amount of the assumption being over $20."

"We answer the defendant's 2d point in the negative. As we understand this case, if the county made the assumption at all, it was to secure the bricks for the court-house which they were au-

[Jefferson County *v.* Slagle.]

thorized to build, and which was building by Dickey under a contract; and on the failure of their contractor to pay for the bricks that were to go into the building, and did go into the building. And if the commissioners contracted to pay for the bricks in the place of the builder, they may do so, and the contract is for the good of the county, and they are paying the debt directly, which before they were to pay would be through the builder."

" 3. The commissioners having made a contract with James T. Dickey for the erection of the court-house, the power of the commissioners would be exhausted in that direction, and no contract made with the Slagles for the furnishing of materials would be binding on the county; and this much more so, if Slagles knew of the contract with Dickey."

" We answer the defendant's 3d point in the negative, and refer to our answer to last point."

" 4. No amount having been demanded by the plaintiffs from the commissioners of the county before said suit, the action cannot be sustained, and the verdict must be for the defendant."

" Whether the facts assumed in this point are so or not is for the jury. If they are, we answer in the affirmative; but if plaintiffs, before bringing suit, presented their bill and demanded payment, and the commissioners, without looking at it or receiving it, flatly refused payment, the plaintiffs may recover what is justly due, without proving the presentment of that bill, or what that bill was."

The verdict was for the plaintiffs for $890.02.

The defendant removed the case to the Supreme Court, and assigned for error:—

1, 2. The rejection of the offers of evidence.

3. The answer to the plaintiffs' point.

4, 5, 6. The answers to the defendant's points.

*A. L. Gordon* (with whom was *I. Gordon*), for plaintiff in error.—The commissioners, of whom two may be a board, must meet by notice or adjournment, and have a public office at the county seat: Act of April 15th 1834, §§ 11, 19, 20, Pamph. L. 539, 541, Purd. 204, pl. 14, 208, 209, pl. 8, 9. To do an act of a public nature all the body must *convene:* Baltimore Turnpike, 5 Binn. 485; Cooper *v.* Lampeter Township, 8 Watts 128; Treichler *v.* Berks Co., 2 Grant 445; Turnpike *v.* Craver, 9 Wright 386. The case is within the Statute of Frauds: Maule *v.* Bucknell, 14 Wright 52; Landis *v.* Royer, 9 P. F. Smith 95.

*G. A. Jenks* (with whom were *Jenks & Clark*), for defendants in error, referred to the Act of 1834, *supra.* A majority of the commissioners can bind the county: Cooper *v.* Lampeter Township, Treichler *v.* Berks Co., *supra.* Allegheny *v.* Leckey, 6 S. & R.

170; Dauphin Co. v. Bridenhart, 4 Harris 461.    The contract proved by plaintiffs was direct with the commissioners, and is not within the Statute of Frauds: Arnold v. Stedman, 9 Wright 188; Landis v. Royer, *supra*.

The opinion of the court was delivered, January 3d 1871, by

WILLIAMS, J.—This action was brought by the plaintiffs below, against the county of Jefferson, to recover the price of bricks which they delivered to build the court-house in the borough of Brookville in said county. It appeared from the evidence given on the trial that the commissioners entered into a written agreement with James T. Dickey for the erection of the court-house, by which he agreed to furnish the materials and do the work for the sum of $57,600; and that Dickey entered into a written contract with the plaintiffs, by which they agreed to make 300,000 bricks at $7.50 per thousand, and have them ready at the times stipulated in the agreement; that after they had delivered to him 25,000 or 30,000, they refused to deliver any more because of his failure to pay for them according to the terms of the contract; and that afterwards they delivered the bricks in controversy at the request of two of the commissioners, but whether upon their express promise to pay for them or not, was the matter of dispute between the parties, and in regard to which the evidence was conflicting. The jury, under the instructions of the court, found that the bricks were delivered on the promise of the commissioners to pay for them, and returned a verdict for the plaintiffs, upon which judgment was entered by the court below.

The assignments of error embrace the exceptions taken by the defendant, on the trial, to the rulings of the court in the rejection of evidence, and to the instructions given to the jury in answer to points submitted on both sides.

The first question presented by the specifications of error which we shall consider—though not the first in the order of the assignments—is, whether the two commissioners had power to bind the county by their promise to pay for the bricks, which the plaintiffs delivered at their request? This is the main question in the case; and it arises on the answers of the court to the plaintiffs' 2d and the defendant's 1st point. The plaintiffs requested the court to instruct the jury, that if two of the commissioners, in order to obtain the bricks to finish the court-house, went to the yard and promised the plaintiffs that if the bricks were delivered at the court-house they would pay for them, and the bricks were delivered on the strength of this promise, the county would be bound by their agreement for the amount of bricks delivered after and in pursuance of such promise. The court answered this point in the affirmative, if the two commissioners went to the brick-yard and made the contract, or assumed the payment of the bricks

[Jefferson County v. Slagle.]

as commissioners, and not as individuals. If they did, and plaintiffs relying on such assumption by them as such, delivered the bricks, they may recover. The defendant, on the other hand, requested the court to charge that there is no such action shown by the board of commissioners as would bind the county. That, admitting that there was an assumption by the two commissioners at the brick-kiln, it would avail the plaintiffs nothing, as they were not acting as a board of commissioners, and could not bind the county. The court declined to answer this point as requested, and added that the two commissioners "may have been acting for the county in visiting the brick-yard in the same way and as much as they were while looking after the county bridge at Troy. If the assumption was made by the county, and the bricks were delivered on the faith and credit of the county, and the commissioners there, on the ground, pledged the county for the payment of the bricks, the plaintiffs may recover. If the commissioners pledged themselves, and not the county, in payment, we answer this point in the affirmative." Did the court then err in the answer which it gave to either of the points? The commissioners are the public agents of the county, and the law expressly provides that two of them shall form a board for the transaction of business, and when convened in pursuance of notice, or according to adjournment, shall be competent to perform all and singular the duties appertaining to their office. It is true, that they are required to keep their offices at the seat of justice of the respective counties, but it does not follow that they cannot make a valid and binding contract on behalf of the county, unless they make it in the office which they are required to keep—if such contract is in other respects within the scope of their authority. Nor has it been the practice of the commissioners to make contracts in behalf of the county only in " the commissioners' office." They have been in the habit of making contracts wherever it best suited their own convenience and the exigency of the public business. Why, then, should the validity of contracts, so made, be questioned or denied? If made within the scope of their authority, and without any fraud or collusion on their part, why should they not be valid and binding on the county whenever made? The statute does not declare contracts made out of " the commissioners' office" illegal, and there is no rule or principle of the common law which renders them void. The contract in this case was within the scope of the commissioners' authority, and, under the provisions of the statute, the two commissioners had power to make it—and if they made the contract in their capacity as commissioners, as the jury have found, it is binding on the county, if it is not within the Statute of Frauds, which is the next question to be considered.

The court was requested in defendant's 2d point to charge that

[Jefferson County v. Slagle.]

the Statute of Frauds bars the plaintiffs' claim. The court answered this point in the negative, and assigned, in substance, as a reason therefor, that if the county made the assumption at all, it was to secure the bricks for the court-house which the commissioners were authorized to build; and if the commissioners contracted to pay for the bricks in the place of the builder, they might do so, and the contract was for the benefit of the county. Did the court err in refusing the defendant's point? The contract as averred in the declaration and as found by the jury under the evidence, was not a contract to answer for the debt or default of the contractor, but a direct promise, or agreement, on the part of the commissioners, to pay for the bricks in consideration of which the plaintiffs agreed to deliver them. It needs no argument to show that such a contract is not within the Statute of Frauds. The plaintiffs did not deliver the bricks under their agreement with Dickey, but on the promise or contract of the commissioners to pay for them. The debt, contracted by them for the bricks, was, therefore, as much a debt of the county as if the plaintiffs had made no agreement with Dickey for their delivery—but had contracted with the commissioners in the first instance. The 6th specification of error was abandoned on the argument, and there is nothing in it which requires any special notice at our hands. The remaining assignments relate to the rulings of the court in rejecting the defendant's offers of evidence. It was admitted that the defendant was allowed to prove so much of his first offer as showed that the assumption by the commissioners was only conditional. But the complaint is that the defendant was not allowed to show that the commissioners paid Dickey, after the alleged arrangement, the sum of $5900; and that in the following November or December they had paid out all the money, and more than was due him; that he refused to go on with the contract for building the court-house, and the commissioners relet the contract to Nicholson & English for $21,742. We are of the opinion that the court rightly rejected these offers. They were not relevant to the issue, for they did not tend to show that the commissioners did not promise to pay the plaintiffs for the bricks in controversy, nor to rebut any evidence given by them.

The question whether the commissioners promised, on behalf of the county, to pay for the bricks, and whether the plaintiffs delivered them in consideration of their promise, was fairly submitted by the court to the jury, and as we discover no error in the record, the judgment must be affirmed.

Judgment affirmed.