# LeMoyne, Appellant, *v.* Washington County.

*Road law—County roads—Act of June 26, 1895, P. L. 336—Collateral attack on order of court—County commissioners—Equity.*

An order of the court of quarter sessions approving the construction of a county road under the Act of June 26, 1895, P. L. 336, based on the finding of the grand jury, cannot be attacked collaterally on a bill in equity to restrain payments to contractors for the construction of the road, on the ground that the estimate of the cost and expenses of the proposed improvement was grossly inaccurate, or that some witness examined before the grand jury was mistaken in what he said, or submitted to them as the probable cost of the improvement. The order can only be attacked on the ground that intentional fraud was practiced on the grand jury and the court by the county commissioners, or some one in their behalf.

In such a case it is the duty of the county commissioners to make the improvement as indicated on the survey and plans filed in court and submitted to the grand jury, and it is not legally necessary that the plans give the details of the proposed improvement; and it is a matter within the discretion of the county commissioners whether bids be taken for a fixed sum to complete the improvement, or for a schedule of prices for the work to be done by the piece.

The Act of June 26, 1895, P. L. 336, puts a limit on the levy that can be made in any one year and on the amount of bonds that may be issued, but it does not indicate the character of road that shall be built or limit the cost per mile for building it; that is left largely to the discretion of the county commissioners, subject of course to the limitation that is upon all public officers who are quasi trustees, that they act in good faith and do not pay excessive and unreasonable prices for the kind of work they have done.

*County commissioners—Meetings—Awarding contracts.*

County commissioners ought to keep written minutes of their meetings at which they award contracts to improve county roads, which would show when the matter was considered and how each commissioner voted, and

they are censurable for not doing so; but a bid or a proposal can be legally accepted by a full board after discussion and deliberation by an agreement not arrived at through parliamentary forms. A motion formally made and seconded and voted upon is not necessary to the legality of the agreement of all the members of the board that the bid of a particular bidder shall be accepted.

Argued Oct. 21, 1905. Appeal, No. 116, Oct. T., 1905, by plaintiffs, from decree of C. P. Washington Co., No. 1461, in equity in case of Julius LeMoyne and William Hough v. Washington County et al. County Commissioners et al. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity for an injunction. Before McILVAINE, P. J.

From the record it appeared that on July 17, 1903, the court of quarter sessions made an order approving the construction of a road as a county road under the Act of June 26, 1895, P. L. 336 from Claysville to Burnsville, a distance of about three miles. This order was based upon the action of the grand jury in approving the construction of the road. The contract for the construction was awarded by the commissioners to Zelt & Brothers. After the road was completed the complainants filed a bill in equity in which they prayed as follows:

1. For an injunction from further carrying out said contract, or any part thereof.

2. That the county commissioners and county treasurer be restrained from issuing or paying any orders on said contract.

3, 4. That the contract be declared illegal and void.

5. That the commissioners be required to answer and to produce on hearing all bids received and the contract executed.

6. For other appropriate relief.

The court found, inter alia, as follows:

11. The written estimate of the engineer, John McAdam, of the cost and expenses of the contemplated improvement of this three-mile section of the road laid before the grand jury was $2,739.86 per mile or $8,219.58 for the three miles of road; the actual cost under the Zelt contract is about $12,600 per mile or $37,911.66 for the three miles and sixty feet. McAdam's estimate was evidently erroneous, not apparently so on its face,

but on account of mismeasurements or mistake in calculation made by the person making the written estimate.

12. On June 11, 1904, the county commissioners and N. C. Hunter, a contractor who was a successful bidder for one of the other seven sections of road, the improvement of which the grand jury approved, agreed on a case stated for the opinion of the court to determine whether his contract (and incidentally all the others that had been entered into by the commissioners under like circumstances) was illegal for the reason that the improvement would cost greatly in excess of the estimate submitted to the grand jury. In an opinion and decree of this court on its law side, filed on June 22, 1904, to 61 August Term, 1904, it was adjudged that the cost of roads constructed under the act of 1895 might legally exceed the estimate submitted to the grand jury, if no fraud was practiced upon the grand jury and the engineer was honestly mistaken in his estimate. Of this opinion and decree the plaintiffs had constructive notice, and no money was paid Zelt & Brothers until after the decree was filed.

13. The evidence in this case is not sufficient to show and it does not show that the county commissioners, J. F. McClay, S. F. Scott and J. B. Gibson, either jointly or individually or in collusion with any other person, were guilty of any corrupt practices or actual fraud or of consciously doing any wrong either in the letting of the contract for the improvement of the road in question or in carrying out and performance of that contract.

14. The evidence in this case does not show, and none was offered to show, that the sum of $37,911.66 is an excessive and unreasonable price for the construction of the three miles and sixty feet of road constructed as the defendants, Zelt & Brothers, were required to construct it, nor does it show that $4.40 per cubic yard for putting down six inches broken stone foundation and three inches of ballast in place, when the stone had to be quarried in and near Washington and transported the long distance to reach the place where they were used, was an excessive and unreasonable price therefor.

＊        ＊        ＊        ＊        ＊        ＊        ＊        ＊

SUMMARY OF ADJUDICATION.

For the convenience of those interested we give a summary of our decision.

We hold:

1. That the decree of July 17, 1903, of the court of quarter sessions made the section of road in question " a county road."

2. That all proceedings which led up to that decree were regular in form.

3. That neither the validity of the finding of the grand jury on which the decree is founded nor the decree itself could be questioned in this proceeding except on the ground that intentional fraud was practiced upon the grand jury and court by the county commissioners, who are defendants in this case, or by some one in their behalf, and there is no such allegation in the plaintiffs' bill.

4. The decree based on the finding of the grand jury, like a judgment based on the verdict of a petit jury, cannot at this late day be collaterally attacked on the ground that the estimate of the cost and expenses of the proposed improvement of this section of road was grossly inaccurate, or that some witness examined before the grand jury was mistaken in what he said or submitted to them as to the probable cost of said road improvement.

5. The section of road in question being decreed " a county road," the county commissioners had power and it was their duty to improve it as indicated on the survey and plans filed in court and submitted to the grand jury, and it was not legally necessary that the plans give the details of the proposed improvement.

6. It was a matter in the discretion of the county commissioners whether bids be taken for a fixed sum to complete the improvement or for a schedule of prices for the work to be done by the piece.

7. It was a matter in their discretion to determine to what bidder they would award the contract, and if they after inquiry believed that the lowest bidder was not responsible they could reject him.

8. There is no evidence in this case that the county commissioners corruptly or fraudulently rejected the lowest bidder or abused the discretion vested in them.

9. County commissioners ought to keep written minutes of their meetings at which they award contracts to improve county roads which would show when the matter was considered and how

each commissioner voted, and they are censurable for not doing so, but a bid or a proposal can be legally accepted by a full board after discussion and deliberation by an agreement not arrived at through parliamentary forms. A motion formally made and seconded and voted upon is not necessary to the legality of the agreement of all the members of the board that the bid of a particular bidder shall be accepted.

10. That the bid of Zelt & Brothers was legally accepted by the full board after discussion and deliberation, and the written contract executed in pursuance thereof by affixing the seal of the county and the signatures of a majority of the commissioners thereto, is binding on the county.

11. The evidence shows that the commissioners went about the improvement of the roads that were decreed " county roads " not having in view any limit upon the cost of the improvement but on the theory that the improvement must be made at whatever expense to the county they would cost at prevailing prices for work and material; but it does not show that they were guilty of any corruption or actual fraud in the matter or had any intention of illegally spending the county's money.

12. The act of 1895, commonly known as the Flinn law, puts a limit on the levy that can be made in any one year and on the amount of bonds that may be issued, but it does not indicate the character of road that shall be built or limit the cost per mile for building it; that is left largely to the discretion of the county commissioners, subject of course to the limitation that is upon all public officers who are quasi trustees, that they act in good faith and do not pay excessive and unreasonable prices for the kind of work they have done. This makes it possible to have " high-priced road " commissioners, and " low-priced road " commissioners; and whether $3,000 per mile or $13,000 per mile roads shall be built is not a question of law to be settled by a court of equity in an injunction proceeding, but a political question or a question of public policy to be settled by the tax-paying voters at the polls when they elect county commissioners.

13. The evidence shows that Zelt & Brothers had completed the work under their contract before this bill was filed, and there is no evidence that they had any knowledge of any irregularity of action or misconduct on the part of the county

commissioners, or that the prices they charged in the aggregate for the work they did is excessive and unreasonable, and the plaintiffs' remedy is not to enjoin the payment of their claim by the county but to pursue the county commissioners on the law side of the court if they have done any wrong in the premises that makes them liable for misspending the county's money.

14. The plaintiffs delayed filing their bill until after the rights of innocent parties had intervened and by their laches have lost their right to the remedy of injunction, if they ever had it.

The court dismissed the bill.

*Errors assigned* were various findings and the decree of the court.

*Boyd Crumrine,* with him *James P. Eagleson, E. E. Crumrine* and *N. R. Criss,* for appellants.— Jurisdiction was not given to the grand jury and court, to approve and decree the reconstruction of the township road in this case into a county road, for the reason that not only the surveys and plans but also the estimate of cost were entirely insufficient: In re Anderson, 109 N. Y. 554 (17 N. E. Repr. 209) ; Noble v. Thompson Oil Co., 79 Pa. 354; Fowler v. Eddy, 110 Pa. 117 ; Gordon's App., 93 Pa. 361; Middletown Road, 15 Pa. Superior Ct. 167 ; Com. ex rel. v. Risser, 3 Pa. Superior Ct. 196; Southampton Twp. Election, 27 Pa. C. C. Rep. 246.

But if jurisdiction were given, upon the surveys and plans and estimate submitted, then the estimate of cost was a limitation upon expenditure which could not lawfully be materially exceeded, and the contract executed with Zelt & Brothers whereby the cost would exceed the estimate was illegal and void: Erie v. Brady, 150 Pa. 462; Reading v. O'Reilly, 169 Pa. 366 ; Lehigh County v. Kleckner, 5 W. & S. 181; Hague v. Philadelphia, 48 Pa. 527 ; Shaefer v. Schuylkill County, 19 Pa. C. C. Rep. 508; Bradford County v. Horton, 6 Lacka. Leg. News, 306.

Neither the county commissioners nor the bidders having knowledge from the surveys and plans of the quantity, character and quality of the work to be done, the contract let in this

case, upon specific bids per cubic yard or square yard, etc., was contrary to public policy, unauthorized and void: Anderson's Case, 109 N. Y. 554 (17 N. E. Repr. 209).

The contract in this case being illegal and void upon the grounds hereinbefore stated, of which the contractors were bound to take notice when they entered into it, equity has power, even though the work was completed, to enjoin the payment of a balance of the contract price remaining unpaid when the bill was filed: O'Malley v. Olyphant Borough, 198 Pa. 525 ; Sutro v. Pettit, 74 Cal. 332 (16 Pac. Repr. 7).

*T. F. Birch,* for J. F. McClay and S. F. Scott, appellees.

*Norman E. Clark,* with him *W. S. Parker* and *Winfield McIlvaine,* for Zelt & Brothers, appellees.

PER CURIAM, November 4, 1905:

The decree is affirmed on the summary of adjudication by the learned court below.