# Pierce, Butler & Pierce Mfg. Co., Inc., v. Rogers, Appellant.

*Mechanic's lien—"Contractor"—Payment for material by owner.*

Where a dealer in plumbing and heating supplies accepts from a general contractor a proposal for the plumbing and heating of a number of houses, but under an express agreement made with the owner personally that he would pay to the dealer directly for such material, the dealer is a contractor, and entitled to file a mechanic's lien for the materials furnished.

Where a materialman contracts directly with the owner of a building operation to furnish material for a number of houses, and the owner after certain of the houses are completed, and before the remainder are begun becomes insolvent and is declared a bankrupt, the materialman is justified in not completing the balance of the contract, and may file a lien against the houses completed for the material which he furnished; and in so doing if he charges more

for the material than the contract would warrant, this may be established at the trial, but not on a rule to strike off the lien.

If in such a case the houses which were completed are adjoining, or have contiguous curtilage, the claimant may determine the amount to be apportioned to each of the houses, but the justness of the apportionment may be inquired into at the trial.

Where a mechanic's lien has been apportioned amongst several houses, and the lien shows on its face the various items furnished with the dates, and that all the material was furnished within the statutory time, the lien will not be stricken off because it fails to show the items of material which went into each house. If none of the material is actually furnished to a particular house within six months, this may be shown at the trial, but is no ground for striking off the lien.

Argued December 11, 1914. Appeal, No. 239, October T., 1914, by defendant, from order of C. P. No. 3, Philadelphia Co., December T., 1911, No. 7239, M. L. D., discharging rule to strike off mechanic's lien, in case of Pierce, Butler and Pierce Mfg. Co., Inc., v. Calvin W. Rogers, Owner or Reputed Owner and Contractor. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Affirmed.

Rule to strike off mechanic's lien.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order discharging rule to strike off mechanic's lien.

*Edward Hopkinson, Jr.,* with him *A. S. Ashbridge, Jr.,* and *Abraham M. Beitler,* for appellant.—The claim shows on its face that the claimant was not a contractor within the definition of the status.

Even if the claimant had a right to file a claim as a contractor, yet the claim as filed is not self-sustaining and must be stricken off.

The claim is filed for an obviously improper amount.

The claim does not exhibit a proper case for apportionment: Gordon v. Norton, 186 Pa. 168.

The claim does not set forth the time when the materials were furnished for the house against which this claim is filed: Bradley v. Gaghan, 208 Pa. 511; Knelly v. Horwath, 208 Pa. 487.

*John M. Thissell,* with him *J. Quincy Hunsicker, Jr.,* and *J. Quincy Hunsicker,* for appellee.

OPINION BY KEPHART, J., July 21, 1915:

This appeal is from an order of the court below refusing to strike off the mechanic's lien and the judgment entered for want of an affidavit of defense. It is urged:

First: That the claimant was not a "contractor" within the mechanic's lien law of 1911. The defendant made a contract with one Powell for the plumbing and heating of a number of houses. Powell asked the plaintiff for a proposal for furnishing certain material necessary in this contract. The proposal while accepted by Powell was subject to the condition that the defendant, the owner, would personally pay for the material. The defendant agreed in writing to pay for all of said material in specified amounts. The contract, so far as it affected this plaintiff and defendant, was made up from the contract between Powell and Rogers, the defendant, the conditional proposal by the plaintiff to Powell and the defendant, and accepted by them. It was a tripartite agreement among them. Powell, the general contractor as to this work, was to do the buying. The plaintiff, pursuant to this buying, was to furnish the material; and the defendant, for whose property the material was bought, was to pay for it. This, after a careful study of the writings, was the reasonable interpretation of the contracts between the parties and places the claimant in the position of a contractor. It was an original undertaking on the part of the defendant to pay for the material delivered. It was not an agreement to pay in

case Powell did not pay. The minds of all the parties met, completing the contract, when the defendant made his agreement to pay. The debt created thereby was his: Jefferson Co. v. Slagle, 66 Pa. 202; Pittsburgh C. Co. v. Westside, Etc., Railroad Co., 227 Pa. 90; Corcoran v. Huly, 231 Pa. 441. The lien avers that the plaintiff was a contractor. There is nothing in the lien from which the court might infer that he was acting as a subcontractor or as a surety. If a different state of facts exists, as appellant contends, a trial by a jury should develop it. As the record before us stands the plaintiff was entitled to file the lien as a contractor for the defendant.

Second: The objection that the claim is not self-sustaining because it does not appear that the plaintiff had completed its contract with the defendant cannot be sustained. The contract included many houses in addition to those against which this lien is filed. It appears from the lien that the defendant was insolvent and later bankruptcy proceedings had been instituted against him. A large part of the material shipped by the claimant had been returned because of defendant's insolvency. The claimant thus had a good excuse for not completing the balance of the contract.

Section 20 of the Act of June 4, 1901, provides that where proceedings in bankruptcy or insolvency are instituted by or against any contractor or owner, the contract shall be suspended but the right to file a lien shall remain and may be exercised with the same effect as if further proceedings under such contract had been determined by consent of the parties. The lien does not set up a credit for a note alleged to be given in payment of the claim. If it was accepted in payment of the account, this could only be used as a matter of defense.

Third: The Supreme Court, in Murphy v. Bear, 240 Pa. 448, approved the method adopted in that case in ascertaining the value of the materials furnished, where the contractor had been prevented by the owner for

no sufficient cause, from completing his contract. In ascertaining values in claims of this character what is desired is fairness and accuracy as far as possible. If the claimant has charged more for his material than his contract would warrant, this may be established, but not on a rule to strike off the lien. The method here employed was to charge the customary market price for the material delivered. This is fair and yet it is open to the same criticisms that could be used against the method adopted in Murphy v. Bear, supra. It might be that in thus charging the profit to the lienor it was in excess of that which the contract warranted; or his principal profit may be derived from the material that was yet to be furnished; or all the material could not be furnished at the contract price at any profit. These are all matters of proof.

Admitting the contract originally was entire, the insolvency of the owner prevented the claimant from completing his contract and permits the lien to be filed and a recovery for the materials furnished. "There can be no question that in nearly all of such cases the contract is entire, yet nearly all provide for advances or payments at stipulated stages of the work, the avowed object being to enable the contractor to complete the whole. While plaintiff's failure in ability or intention to complete the work will be a good defense, even to an action for a payment stipulated to become due on a state of progress shown to be reached, yet a refusal to pay such an installment without that or other legal excuse is such a breach of the contract as will justify a rescission, and entitle the plaintiff to recover pro tanto for the work done": Easton v. Jones, 193 Pa. 147.

Fourth: It is urged that the claim is not a proper one for apportionment. The contract, as applied to this block, was for nineteen houses and the lien was filed against fifteen houses. The Act of March 30, 1831, P. L. 243, permits, where two or more houses are to be erected, one lien to be filed covering all the houses,

apportioned in amount to each of the houses as their share of the debt contracted for would warrant. Section 12 of the Act of 1901 provides that no apportioned claim shall hereafter be allowed but separate claims for the amount due, determined by apportionment, may be filed as therein set forth. The lienor by this section determines the amount to be apportioned to each of the several buildings against which he claims the right to file a separate lien. This is the manner pointed out by the Act of 1831, determining how an apportionment should be made. Whatever standard the claimant may adopt the justness of his apportionment may be inquired into. If certain houses have been unfairly dealt with this would be a defense as to the excess apportionment. For some reason the lien was not filed against four of the houses. It may be the owner's insolvency prevented the completion of the work and these houses were not commenced. This is fairly to be deduced from reading the lien. The claimant thereby would not be deprived of his right to file a lien, provided the houses, which were built, were adjoining or curtilage contiguous within the meaning of Sumption v. Rodgers, 242 Pa. 348, and Gordon v. Norton, 186 Pa. 168. The apportionment is to be made among houses or other buildings but not against pieces of ground upon which houses were yet to be erected. It remained, therefore, for the claimant to apportion his claim among the houses erected. The claim avers that the houses were adjoining and contiguous, and from an inspection of the apportioned claims, as noted in the lien, we are not prepared to say that the houses were not adjoining or their curtilages not contiguous. If they were not so this would be a defense to the lien.

Fifth: We said, in the appeal of Crane & Co. v. Rogers, et al., No. 1, in an opinion handed down this day, that somewhere in the lien or bill of particulars there should appear the dates on which the materials were furnished. An examination of this lien shows that

the dates are set forth. It appears that the last furnishing was done within the statutory time for filing a lien and that the other requisites of a valid lien were present. It is objected, however, as this is an apportioned claim against one house, that not only should the amount due be apportioned, but the items of material which made up the apportioned claim should be set forth, so that each claim would show just what materials went into the house to be charged,—this, that it might be definitely known that the apportionment was accurate and the last furnishing was within the statutory period. The idea of an apportionment comes from the fact that labor and materials are furnished to a number of houses under one contract. The claimant may not and often does not know what materials went into a particular house. We are now speaking of houses within a block or which adjoin or their curtilages are contiguous. The houses may vary some in size and requirements, necessitating more or less material, and odd figures may result when the apportionment is made. The Act of 1831 states that each house should bear its just share of the entire charge, not that the contractor would be required to list every nail or screw that went into a particular house. Substantial accuracy is all that is desired, based upon fair, reasonable grounds. Much of the material furnished in this contract was concealed and from the lien as filed it is reasonable to conclude that the house charged bears its proportionate share of the materials furnished. All of the material went into the houses against which the apportioned claims are filed and none others. "Among several lots, parts of one block, a claimant may apportion, without having made his deliveries separately to each lot": Bradley v. Gagham, 208 Pa. 511. In that case the liens were against three separate blocks under one contract of furnishing for the whole, the claim being filed by an apportionment to each block. This, it is held, could not be done.

If none of the material was actually furnished to a particular house within six months and it be a defense to an apportioned claim such as this is, it can be shown by proof.

The assignments of error are overruled and the judgment is affirmed at the cost of the appellant.