## Garr et al., Appellants, *v.* Fuls et al.

*Equity—Findings of fact—Appeals.*

1. The facts determined by a chancellor will not be reversed on appeal, in the absence of manifest error, and are to be given the same weight as the verdict of a jury.

*County commissioners—Public officers—Presumption as to regularity.*

2. County commissioners have a right to assume that the local authorities in road matters act regularly and in a lawful manner.

*Equity—Public contracts—Taxpayer's bill.*

3. A taxpayer has such an interest as will entitle him to maintain a bill in equity to restrain the awarding of a public contract.

*Road law—State highways—State aid roads—Acts of June 12, 1919, P. L. 450, and March 10, 1921, P. L. 26—Counties—Consent by highway department—"Approval"—Construction of statute by department—Implied power—Bonds.*

4. A county has authority, under the Acts of June 12, 1919, P. L. 450, and March 10, 1921, P. L. 26, to expend its funds for the construction of a highway through two townships and a borough, and to make a contract by which it will be reimbursed in part for such expenditure by the townships and borough.

5. The word "approval" as used in the Act of March 10, 1921, P. L. 26, signifies not merely the approval of the highway department of the application where a road is to be built at the expense of a county, but also comprehends the supervision and sanction of all the various steps leading up to the contract itself and its performance.

6. Such construction of the act by the department for many years and covering contracts amounting to millions of dollars is entitled to consideration.

7. A county in the building of roads, acts in its governmental rather than in its business capacity, and is in fact but a branch of the general administration of the state policy in regard to roads.

8. Where a county has the power to make expenditures for the building of a road, it has the implied power to issue bonds to pay the contractor.

*County commissioners—Signing agreement—Signature of two out of three—Minutes of meeting—Acts June 27, 1895, P. L. 403; May 6, 1909, P. L. 434; May 31, 1911, P. L. 468—Advertisements.*

9. Where two out of the three county commissioners at a formal meeting sign an agreement for the county, the absence of the third is immaterial; nor is the fact that no formal minute of the action was entered, fatal to the proceeding.

10. It is not fatal to the proceedings, where a road is to be built at the expense of a county under the control of the highway department, that the bids for the work were not advertised and opened by the controller as provided by the Acts of June 27, 1895, P. L. 403, and May 6, 1909, P. L. 434.

11. In such case due advertisement by the highway department and awards by it, are all that is necessary.

12. The Acts of 1895 and 1909, were repealed by the Act of May 31, 1911, P. L. 468.

13. Even if they were not expressly repealed there is an implied substitution of the advertisement of the highway department for that of the county controller.

14. Not considered, the effect of the Act of April 7, 1925, P. L. 187, validating irregularities in highway proceedings.

15. Not considered, the effect of a delay of six months in filing a bill for an injunction in this case to prevent the performance of the contract.

Argued February 1, 1926. Appeal, No. 65, Jan. T., 1926, by plaintiffs, from decree of C. P. Northampton Co., April T., 1924, No. 3, dismissing bill in equity in case of Sylvester Garr et al., taxpayers, v. Jacob Fuls et al., Supervisors of Washington Twp., and Plainfield Twp., officers of the Borough of Bangor, the townships and borough, the officers of Northampton County, and Northampton County, the State Highway Commissioner and the Contractor. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Bill by taxpayers for injunction to restrain performance of contract. Before STOTZ, J.

The opinion of the Supreme Court states the facts.

Bill dismissed. Plaintiffs appealed.

*Error assigned* was, inter alia, decree, quoting bill of exceptions.

*C. F. Smith,* of *Smith & Paff,* for appellants.—The alleged contract was invalid as being in violation of the tenth section of the Act of June 27, 1895, P. L. 403, as amended: Harris v. Phila., 283 Pa. 496; Com. v. Jones, 283 Pa. 582; Willis v. Directors of Poor, 284 Pa. 138; Mansel v. Nicely, 175 Pa. 367; Com. v. Mitchell, 82 Pa. 343; Hibbs v. Arenberg, 276 Pa. 24.

The alleged contract was unlawful because not authorized by the board of commissioners acting as a board: Pike County v. Rowland, 94 Pa. 238.

The alleged contract was ultra vires. Bucher v. Northumberland County, 209 Pa. 618.

*James O. Campbell,* First Deputy Attorney General, and *W. H. Kirkpatrick,* of *Kirkpatrick & Maxwell,* with

them *T. McKeen Chidsey, John L. Shelley, Jr.,* and *George W. Woodruff,* Attorney General, for appellees.— The procedure followed in the letting of the contract in question is authorized by the Acts of June 12, 1919, P. L. 450, as amended by the Act of March 10, 1921, P. L. 26, which acts, with respect to the matters complained of, supersede the County Controller's Act: Erie R. R. v. P. S. C., 77 Pa. Superior Ct. 196; State Line & Juniata R. R. Co.'s App., 77 Pa. 429; Gas & Water Co. v. Downingtown Boro., 193 Pa. 255.

The contract is valid and binding and county funds may be expended under it.

The contract was not ultra vires: Williamsport v. Com., 84 Pa. 487; McCormick v. Twp.. 246 Pa. 169; Warner v. Poor Directors, 38 Pa. Superior Ct. 437.

*H. M. Hagerman,* for the Borough of Bangor, cited on the question of laches: Keeling v. Ry., 205 Pa. 31; Lemoyne v. County, 213 Pa. 123; O'Malley v. Boro., 198 Pa. 525.

OPINION BY MR. JUSTICE SADLER, April 12, 1926:

A public highway, in the County of Northampton, passed through the townships of Washington and Plainfield and the borough of Bangor. It was proposed that it be made a county road to be built under the supervision of the State, and petitions were presented by the three municipalities mentioned requesting the county commissioners to apply to the highway department for the necessary surveys. By due corporate action, those interested made formal application, agreeing to repay the county for a certain proportion of the cost incurred, upon completion of the improvement. This resulted in a formal request by the county to the highway department to proceed as directed by the various applicable statutes, the written understanding being that the entire cost would be paid by it in the first instance, but preserving the right to compel reimbursement, in part,

from the petitioning municipalities, as set forth in their resolutions asking that the improvement be undertaken. At this point, it may be observed that in the bill, which is the foundation of the present proceeding, it is averred that the amounts stipulated to be respectively paid were in excess of the capacity of the petitioners to borrow, without a vote of the electors, but this position was abandoned on hearing, and is not raised on this appeal. Certainly, the commissioners had the right to assume that the local authorities were acting regularly, and, presumably, in a lawful manner: Jefferson County v. Rose Twp., 283 Pa. 126.

After due deliberation, the petition to the state highway department was signed by all three commissioners, and forwarded. As a result, investigation followed, surveys were made by competent state engineers, and careful estimates prepared showing the probable cost of the improvement. Due advertisements were later inserted by the highway commissioner, in the manner provided by the Sproul Act (May 31, 1911, P. L. 468, section 14). After comparison of the bids with the calculations deemed reasonable, as determined by the department, Raub, one of the defendants here, was chosen as the lowest responsible contractor, the county notified of this action and the price agreed upon. On October 1, 1923, an agreement was entered into between the county and state, approved by the controller, by which it was stipulated that the work should be done under the direction of the latter, a formal contract to be executed by the former with the contractor. On the day following, the agreement with Raub to do the work for the amount bid was signed by two of the commissioners at a regular meeting, the third, who was opposed to the entire improvement, being absent. Preparation for the carrying on of the construction was immediately begun, and tools and machinery placed upon the ground to the value of $19,000.

Though the question had been discussed since 1922, the contract let on October 2, 1923, and preparations for carrying it out begun immediately thereafter, it was not until March 21, 1924, that the present bill was filed by taxpayers to restrain the performance of the work, and to prevent the expenditure of any county funds on account thereof. The invalidity of the entire proceeding was averred, both on the ground that the county was without power to undertake the improvement, and because of certain alleged irregularities to be noticed hereafter. Of course, the taxpayers had such interest as made possible the institution of such a proceeding (Page v. King, 285 Pa. 153; Phila. v. Gorgas, 180 Pa. 296), but it could be successfully maintained only if they were able to point out some threatened legal wrong. A preliminary injunction was granted, but subsequently dissolved. The same conclusion was reached by the learned court below after final hearing, when findings of fact and conclusions of law were declared. On exceptions, the court in banc concurred in dismissing the bill, and, from the final decree entered, this appeal has been taken.

In considering the questions involved it must be remembered that the facts determined by the chancellor are not to be reversed in the absence of manifest error, and are to be given the same weight as the verdict of a jury: Houghton v. Kendrick, 285 Pa. 223; Grace v. Moll, 285 Pa. 353; Archbald Coal Co. v. Murrin, 284 Pa. 69. Here, none of the evidence has been printed, and we must assume there was sufficient to justify the statements set forth by the court below. Indeed, they do not seem to be challenged, except as appears in the thirteenth assignment, where evidently an immaterial clerical error was made in stating the amount of the bid, and in the fourteenth, where the statement is made that the contract of Raub was executed with the approval of the county controller. The former signed the agreement with the highway department on August 1st, and we

must assume that there was testimony justifying the court in saying that the controller was satisfied with the contract made the following day in accordance with the stipulation he had already assented to.

Appellants first contend that the county was without authority to expend funds for construction of a highway, such as here proposed, passing through two townships and one borough.    Certainly, it would have had no such power under the Act of 1834, regulating the laying out of township roads, nor was it a county road such as contemplated by the Act of 1895.    In 1911, the Commonwealth determined upon a new policy in road building, having for its ultimate purpose the development of a uniform system of permanent highways to be constructed under the supervision of competent engineers. From year to year, the plan, thus begun, has been extended and expanded with resultant benefit to the public at large.    We now have state highways, state-aid highways, county roads and township roads.    Even the latter class has been gradually brought under control of the highway department, and the plans and specifications for these, as well as expenditures for their improvement, and contracts so providing, must first be approved: Acts July 16, 1917, P. L. 1004; July 8, 1919, P. L. 770; and Administration Code, June 7, 1923, P. L. 498, section 1906 (a) and (b).    So, the power of counties to expend money for construction has been broadened, and township roads may be built jointly with the local municipality (Act May 24, 1917, P. L. 291), or the county may contribute to the improvement or rebuild the same with its own funds.    This is allowed by the Acts of June 12, 1919, P. L. 450, and March 10, 1921, P. L. 26, the latter expressly providing "that when the improvement and maintenance of any public highway in the county is desired by the county without the intervention of the township or borough, the commissioners of the said county may make application for approval directly to the state highway department."    It is by

virtue of the cited authorization that the present proposed improvement was undertaken by the county, it agreeing to pay the entire cost, though the townships and borough separately agreed to partially reimburse it for the outlays made.

The general procedure to be followed in the improvement of all state roads, state-aid roads and roads built by the State for and at the cost of the county, is that fixed by the Sproul Act of 1911, and the Act of 1921 clearly indicates that the details of letting and construction shall be under the control of the highway department, for it directs that it shall be done after its approval of the plans and improvement. The court has found as a fact that, "The procedure with reference to the applications, advertising, receipt and opening of bids, and letting of the contract in this case was the usual method and procedure of the state highway department in all cases where a road is to be built at the expense of a county, or a county and townships or boroughs, and has been used in approximately 150 contracts through the State of the same kind representing an expenditure of twenty to twenty-five million dollars." And the court further said, in the opinion filed: "What is the meaning of the word 'approval,' as used in the Act of 1921? Does it signify merely approval of the application for the road, or does it comprehend the supervision and sanction of all the various steps leading up to the contract, including the contract itself and its performance? The highway department, since 1919, has construed it to mean the latter, and in many road projects all over the State, involving tens of millions of dollars, has acted upon that construction in the same manner as was done in the present case. The word 'approval,' as construed and acted upon by the department, included the preparation of plans and specifications, the question of type of construction, the grading, the drainage, the grades and curves, the advertisements for and receipt and opening of bids, comparison of the bids with

the previous estimates made by the department engineers, and the awarding of the contract." This uniform construction of the meaning of the legislation is entitled to consideration: State Line & Juniata R. R. Co.'s App., 77 Pa. 429.

The county is a quasi-municipal corporation, which aids in the enforcement of the policy of the state: Chester Co. v. Brower, 117 Pa. 647. Merely because to it have been delegated certain local rights of government "does not sever it as a body from the state": Com. v. Brice, 22 Pa. 211. As distinguished from a municipal corporation, "a county organization is created almost exclusively with a view to the policy of the State at large......With scarcely an exception, all the powers and functions of the county organization have a direct and exclusive reference to the general policy of the State, and are in fact but a branch of the general administration of that policy": Freeze v. Columbia Co., 6 W. N. C. 145, 146. And, in the building of roads, it is acting in its governmental, rather than business, capacity: Moore v. Luzerne Co., 262 Pa. 216; Cousins v. Butler Co.. 73 Pa. Superior Ct. 86. What is the policy of the Commonwealth in the construction of highways has been well expressed by Judge HEAD, in Erie R. R. Co. v. Pub. Ser. Com., 77 Pa. Superior Ct. 196, 204, when he said: "In 1911 the Legislature of Pennsylvania appears to have finally determined it would no longer attempt to expand or develop the then existing system of roadmaking in the Commonwealth. Long years of painful experience had at last brought the conviction that if we were to look forward to a system of highways that could, in time, be developed so as to reasonably meet the necessities of the State and the demands of its people, the foundations of that system must be laid by the State itself. They must needs be as broad as our territory. Their design and the execution of that design must be marked by that unity of purpose and effort which is the attribute of the sovereign, and must be supported by a

never-failing stream of financial aid, the source of which could only be the taxing power of the Commonwealth."

We are convinced that the county was fully authorized to contract for the present improvement, and that the procedure followed was that legally required and established by the highway department. It cannot, therefore, be said that the action of the county was ultra vires. Having the power to make the necessary expenditures, it has the implied power to issue the necessary obligations to secure the funds to pay the contractor: Williamsport v. Com., 84 Pa. 487.

It is further contended that even though the county had authority to enter into the contract to reconstruct the highway, yet such irregularities appeared as to render inoperative the action taken. The contemplated improvement was under discussion by the county commissioners for more than a year prior to the letting of the contract, and the three then acting officers all signed the original application to the department asking that the preliminary work be done. In 1923, a third commissioner expressed disapproval of the project, and he did not join in the agreement of October 1st, stipulating that a formal contract would be entered into with Raub, the lowest bidder, though the controller approved it. At a regular meeting, on the following day, as the court has found, two executed the writing, now proposed to be set aside. The mere absence of the third at the time of signing, even if the names of the two had been affixed separately, would not render it invalid: Jefferson Co. v. Slagle, 66 Pa. 202; Pike County v. Rowland, 94 Pa. 238. Nor is the fact fatal that no formal minute of the action taken was entered: LeMoyne v. Washington County, 213 Pa. 123.

Again, it is objected that the bids for the work were not advertised by the controller, or opened by him, as required in most cases where the amount involved is in excess of $100: Act June 27, 1895, P. L. 403; reënacted May 6, 1909, P. L. 434. This complaint overlooks

the fact that the purpose of the act, and similar legislation applying to other municipalities, is to secure fair and honest competition, with full notice to any who may be interested and desire to bid.   It is true that where advertising is made mandatory, the statutory requirements must be complied with: Harris v. Phila., 283 Pa. 496; Phila. Co. v. Pittsburgh, 253 Pa. 147; Flinn v. Phila., 258 Pa. 355; Carpenter v. Yeadon Borough, 208 Pa. 396.   Due notice must be given, and, if changes are made, or specifications altered so that prospective bidders may be deceived, the contract attempted to be let may be avoided: Louchheim v. Phila., 218 Pa. 100; Com. v. Jones, 283 Pa. 582; Page v. King, supra.   However, even in cases where advertising is required, there may be circumstances which will dispense with the necessity, and this has been held where unnecessary delay or idle expenditure of money would be caused, for example, where the article required could be obtained from but one source, and competitive bidding was impossible: Silsby Mfg. Co. v. Allentown, 153 Pa. 319; Phila. Co. v. City of Pittsburgh, supra; Com. v. Tice, 272 Pa. 447.

As already observed, the policy of the State is to assume control, or exercise supervision, over all road construction, so that uniformity and permanency may be obtained.   For this purpose it employs a specialized force, much better equipped than is a county organization to make surveys and estimates, and examine the details of bids to determine whether all essential requirements have been provided for, and whether the prices demanded for work are reasonable.   The Sproul Act of 1911, therefore provided, in case of roads contemplated by that legislation, all preliminary work, including advertising, should be done by the highway department, and that the proposals made be submitted to it, so that the best results could be secured.   This legislation repealed all that was inconsistent therewith.   The procedure there laid down has been adopted as to other

roads, including those constructed by counties under the later acts, and, in the present instance, due advertisement was given by the department, the bids opened, and the lowest responsible bidder ascertained as therein provided. The course followed was ratified by the county controller when he joined in the agreement of October 1, 1923. For him to have separately publicly asked for proposals from contractors would have been worse than useless.

Even if the requirements of the Act of 1895, reënacted in 1909, were not expressly repealed, in so far as the class of contracts with which we are now dealing is concerned, there was an implied substitution of the advertisement by the highway department in lieu of that ordinarily required by the controller, and to remove doubt the legislature has now so expressly provided: Act April 7, 1925, P. L. 187. There is no presumption of an implied repeal of a statutory provision where the new and the old can stand together (Ulrich's Case, 267 Pa. 233), but here this is impossible, for, under the Sproul Act, the proposals are to be opened by the highway commissioner, and, under the Act of 1895, by the county controller. "Of course, it is well established that a subsequent statute, evidently intended as a revision of the whole subject-matter of, and a substitute for, prior legislation, though it contains no express words of repeal, must, on general principles of law, as well as in reason and common sense, operate to repeal the former": Com. v. Curry, 285 Pa. 289, 294; Jefferson County v. Rose Twp., 283 Pa. 126. In so far as the advertising of contracts for building roads by counties, this was the result effected.

Having reached the conclusions above indicated, it becomes unnecessary to consider the effect of the Act of April 7, 1925, P. L. 187, validating the alleged irregularities here complained of. So that this opinion may not be unduly lengthened, we content ourselves by referring to Swartz v. Carlisle Boro., 237 Pa. 473, where the

applicable principles are elaborately set forth. Nor need we enter into a discussion of the effect of the delay for six months in filing the present bill, during which time large expenditures were made by the contractor, as found by the court. A reference to a few of the cases bearing upon the question of laches, and controlling situations such as are presented by this record, will suffice: Keeling v. P., V. & C. Ry. Co., 205 Pa. 31; LeMoyne v. Borough, 213 Pa. 123; Chew v. Phila., 257 Pa. 589; Condron v. P. R. R. Co., 233 Pa. 197.

The decree of the court below is affirmed at the cost of appellants.