## Musmanno v. Lawrence, Secretary of the Commonwealth

94

*Louis Varia,* for plaintiff.

*Charles J. Margiotti,* Attorney General, and *Edward Friedman* and *E. Russel Shockley,* deputy attorneys general, for defendant.

HARGEST, P. J., August 27, 1935.—This matter comes before us upon a petition for a mandamus against the Secretary of the Commonwealth.

The petitioner avers that he is a resident of Allegheny County, a candidate for the office of justice of the Supreme Court, and that the defendant, acting upon the opinion of the Attorney General of the Commonwealth, intends to certify only one candidate for each political party for the office of justice of the Supreme Court, although two vacancies are to be filled. He prays that a mandamus may issue requiring the Secretary of the Commonwealth to notify, and certify to, all county commissioners that each political party can nominate two candidates in the primary election to be held September 17, 1935, and after said primary election, to certify to the said county commissioners the names of two candidates for each political party to be voted for at the general election.

The return puts these questions squarely in issue. Involved in this question is whether an elector has the right

to vote in the primary election for two persons for the offices of justice of the Supreme Court, where two places are to be filled.

Article v, sec. 16, of the Constitution of Pennsylvania provides:

"Whenever two judges of the Supreme Court are to be chosen for the same term of service each voter shall vote for one only, and when three are to be chosen he shall vote for no more than two; candidates highest in vote shall be declared elected."

In Commonwealth, ex rel., v. Reeder, 171 Pa. 505, the constitutionality of the Act of June 24, 1895, P. L. 212, creating the Superior Court was involved. Section 1 of that act provides, in part: "no elector may vote, either then or at any subsequent election, for more than six candidates upon one ballot for the said office." The act provides for seven judges. It was there contended that only the Constitution could provide for limited voting and an act of assembly could not take away the right of full suffrage. The act was sustained, but the importance of the opinion, in this discussion, is that the Supreme Court recognized that minority representation was the purpose of constitutional and legislative provisions providing for limited voting. It was there said, p. 518:

"But the limited voting plan was recognized and adopted in the constitution because it was deemed wise that as to offices non partisan in character, or which at least should be, the minority party ought to have representation, and this could only be attained by limited voting."

There are other statutory and constitutional provisions for limited voting. The Act of April 10, 1867, P. L. 62, provides for the election of two jury commissioners, and "That each of said qualified electors shall vote for one person only as jury commissioner". This provision is continued by section 292 of The General County Law of 1929, P. L. 1278.

Article v, sec. 12, of the Constitution, relating to Phila-

delphia magistrates, provides that "in the election of the said magistrates no voter shall vote for more than two-thirds of the number of persons to be . . . chosen".

Article VIII, sec. 14, relating to inspectors of election, provides that each elector shall have the right to vote for one inspector.

Article XIV, sec. 7, relating to county commissioners, provides that "in the election of said officers each qualified elector shall vote for no more than two persons," and this same language is found in The General County Law of May 2, 1929, P. L. 1278, art. III, sec. 101. It will be noted however, that all of the constitutional provisions, except that relating to judges, and also the Act of 1867, refer to limited voting "in the election of" the officer. Neither the Primary Act of July 12, 1913, P. L. 719, nor any other statute, provides, in terms, for the limited voting referred to in the Constitution with reference to judges, and the question which confronts us is whether, in the absence of a statute specifically regulating that practice at the primaries, the elector can be thus limited.

Section 11 of the Primary Act of July 12, 1913, P. L. 719, provides: "Primaries shall be conducted in conformity with the laws governing the conduct of general elections, in so far as the same are not . . ·. inconsistent with its terms". So, in any case, if the elector's vote is limited at the general election, must it be unlimited at the primary?

Section 14 of the Act of June 10, 1893, P. L. 419, as amended by the Act of June 22, 1931, P. L. 628, 25 PS §1741, provides that the ballot shall be so prepared that at the right of every party name there shall be a square of sufficient size for the convenient insertion of a cross mark. Section 22 provides: "That the voter may make a cross-mark in the appropriate square, opposite the name of the party of his choice, in the straight party column on the left of the ballot".

Section 27 of the Act of June 10, 1893, as amended by

the Act of April 29, 1903, P. L. 338, 25 PS §1976, provides:

"If a voter has marked his ballot otherwise than as directed by this act, so that for any reason it is impossible to determine the voter's choice for any office to be filled, his ballot shall not be counted for such office".

The petitioner, admitting that where two justices of the Supreme Court are to be elected, it would be impossible to carry out the law with reference to marking straight party ballots if his contention is sustained by putting candidates for both places on each party ticket, nevertheless strenuously contends that that result must be sustained because of the Act of May 10, 1921, P. L. 423, 17 PS §§794, 798.

The Act of 1921 repealed the Act of June 18, 1915, P. L. 1046, providing for the nonpartisan election of judges, and section 1 provides, in part, as follows:

". . . all judges of the Supreme Court and Superior Court shall be nominated on party tickets at party primaries in any year, in the same manner and subject to the same laws in all respects as govern the nomination of other State officers nominated by the voters of the State at large; and such judges shall be elected at general or municipal elections, which shall be held and conducted in the same manner and subject to the same laws in all respects as govern the election of other State officers elected by the voters of the State at large."

It is contended that the expression "in the same manner", relating to both the primary and the general election, requires that the elector shall have the right to vote for as many candidates as there are places to be filled at the primary, and at the general election the tickets shall contain as many names as there are places to be filled. We cannot agree with that interpretation. The purpose of the Act of 1921 was to repeal the Nonpartisan Ballot Law. To hold that the expression "in the same manner" as govern the nomination and election of other State officers, should be given the power of nullifying the right

to vote a straight party ticket provided by the Act of 1931, would be to violate the rules of statutory interpretation. The two acts must be construed so that both may stand, if such construction is possible. There is no difficulty in concluding that the language "in the same manner" refers generally to the machinery for nomination and election. That is to say, that thereafter the judges of the Supreme and Superior Courts shall be nominated on the same party tickets as other officers at the same primary; that the names shall be printed the same way on the ballots and tabulated and counted in the same manner. It would be giving entirely too much scope to the language referred to, to hold that it should nullify the valuable right specifically given by statute to the elector to vote a straight party ticket.

As we have heretofore said, the whole purpose of the Act of 1921 was to repeal the Nonpartisan Ballot Law of 1915 and to relegate the nominations for candidates for courts of record back to the primary system as it then existed under the other laws.

We have before indicated that as to all the other offices except Supreme Court judges where the Constitution provided for limited voting, it referred to "the election". As to judges of the Supreme Court it provides for limited voting when two or more "are to be chosen." Is there any significance in the use of the two expressions? It is true that there were no primaries when the Constitution was adopted, but it is the genius and glory of our constitutional form of government, that when comprehensive words are used in the fundamental law, they may be construed to include situations which the evolution of the times has produced, although such situations were unknown when the Constitution itself was adopted. Such an interpretation has made the Constitution of the United States what Gladstone called it, "the most wonderful work ever struck off at a given time by the brain and purpose of man." There is no reason why such a salutary and beneficent construction should not be applied to our own

State Constitution. What did the people mean when they adopted the Constitution providing that when Supreme Court judges were chosen there was to be limited voting? It would violate the canons of constitutional interpretation to hold that the word "chosen" should be limited to the method used when the Constitution was adopted. The provision is not that limited voting is to be applied when judges are "elected" but when they are "chosen". Can it be successfully contended that under our present system the nomination at the primary is not a part of the process of choosing? The primary election is necessarily involved in such choosing. That being so, it follows that under this provision of the Constitution an elector should not vote for more candidates at the primary than he could vote for at the general election. It would be an anomalous proposition to permit the same voter to help to nominate two candidates, when at the general election he could only vote for one of those two.

It is contended that there might be such an overwhelming party strength in one party that if two nominees were placed on that party ballot, both might be elected. That contention cannot overcome the fact that the people, in the Constitution, were aiming at minority representation, and the courts should put no construction upon either the Constitution or election statutes to defeat that aim.

To sustain the position of the petitioner would create confusion in the marking of ballots, because, as he concedes, at the election a straight party ticket could not be voted with the names of two candidates for the Supreme Court thereon, so that all the ballots would have to be otherwise marked. He answers that two ballots could be furnished, but there is no legislative authority for furnishing two ballots.

The petitioner further contends that the present situation is a novel one because it is the first time that two judges of the Supreme Court have had to be chosen through the medium of a primary election. But two

judges of the Supreme Court were chosen in 1874, 1888 and 1900, and, while nominated by convention, the two major political parties each nominated only one candidate. It seems also to be conceded that in carrying out the constitutional provisions for the election of county commissioners, jury commissioners and other officers, in which limited voting is required by the Constitution or by statute, the uniform practice has been to nominate only the number for which the elector can vote. That has been the construction placed upon the law in the matter of limited voting. Assuming that the whole matter is ambiguous, that construction ought to carry some weight. Contemporary interpretation of a statute may make plain that which is doubtful: Commonwealth v. Quaker City Cab Co., 287 Pa. 161. And the courts will attach no slight significance to the uniform practice continued for a considerable time under an ambiguous statute: Commonwealth v. Mann, 168 Pa. 290; Garr et al. v. Fuls et al., 286 Pa. 137.

The petitioner also argues that where two or more constructions are possible, that one should be adopted which allows the voter the broadest freedom of choice. Certainly giving the elector two methods of marking his ballot, one by marking every name and the other by marking a straight ballot, gives him a broader freedom of choice than he would have if one method were taken away and he would be required to mark a cross after every name, particularly in a very long ballot, or to find some other method of expressing his choice.

In Winston v. Moore, 244 Pa. 447, 454, 456, it is said: "The power to regulate elections is legislative" and "the Constitution says nothing about nominations . . . or how many names shall be printed on the ballot." However, we must interpret the election laws and article V, sec. 16, of the Constitution relating to the election of judges of the Supreme Court so as to make a harmonious system for the proper expression of the will of the voter.

We are therefore of opinion that under this constitu-

tional provision and the statutes an elector may vote for only one candidate at the primary and only one nominee at the general election, and that the political party may nominate only one candidate for office of justice of the Supreme Court, where two vacancies are to be filled.

Now, August 27, 1935, the petition for mandamus is hereby dismissed at the cost of the petitioner.

From Homer L. Kreider, Harrisburg.